IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

LIFE CARE CENTERS OF AMERICA, INC.,

    Plaintiff,

v.                                                                           Civ. No. 18-CV-187-MV

ESTATE OF FANNIE DEAL, Deceased,
by and through Co-Personal Representatives
LORETTA D. HARRISON AND
WISDOMA LIFEWARRIOR,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion to Compel Arbitration [Doc. 4]. The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that the Motion is well-taken and will be granted.

## BACKGROUND

Plaintiff Life Care Centers of America, Inc. ("LCCA") is the management company of Life Care Center of Farmington ("Life Care Center") where the decedent, Fannie Deal, resided. Doc. 4 at 1. On May 13, 2015, Ms. Deal was admitted as a resident to the Life Care Center and placed under Plaintiff's care. Doc. 4-5 at ¶ 21. In connection with her admission to the Life Care Center, Ms. Deal's daughter, Defendant Wisdoma Lifewarrior, signed a Resident Admission Agreement on behalf of Ms. Deal as her "legal representative." Doc. 4-3. The Resident Admission Agreement incorporates "Facility Inserts," including a Voluntary Agreement for Arbitration. *Id.* The Voluntary Agreement for Arbitration ("Arbitration Agreement"), which Ms. Lifewarrior also signed on May 13, 2015, as Ms. Deal's "legal representative," provides that it is an agreement "to arbitrate any dispute that might arise

1

between Fannie Deal and LCC of Farmington." Doc. 4-2. The Arbitration Agreement further provides:

> The parties agree that they shall submit to binding arbitration all disputes against each other and their agents, affiliates, governing bodies and employees arising out of or in any way related or connected to the Resident's stay and care provided at the Facility, including but not limited to any disputes concerning alleged personal injury to the Resident caused by improper or inadequate care, including allegations of medical malpractice; any disputes concerning whether any statutory provisions relating to the Resident's rights under New Mexico law were violated; and any other dispute under New Mexico or federal law based on contract, tort, or statute.

*Id.*

Ms. Deal was a resident of the Life Care Center until her death on January 12, 2016. Doc. 4-5 at ¶ 21. After Ms. Deal's death, Defendants Loretta D. Harrison and Wisdoma Lifewarrior, as co-personal representatives of Ms. Deal's estate, brought a wrongful death action against Plaintiff in the Eleventh Judicial District Court, San Juan County, New Mexico ("State Court Action"). *Id.* In the State Court Action, Defendants allege that Ms. Deal died because of Plaintiff's inadequate care and treatment, and bring claims of wrongful death, negligence, negligence per se, negligent or intentional representations, violation of the New Mexico Unfair Trade Practices Act ("UPA"), and punitive damages. *Id.*, Ex. 5.

On February 23, 2018, Plaintiff commenced the instant action in this Court by filing a Complaint to Compel Arbitration. Doc. 1. In the Complaint, Plaintiff seeks a judgment ordering Defendants to submit their claims against Plaintiff to arbitration. On February 26, 2018, Plaintiff filed the instant Motion to Compel Arbitration. Defendants oppose the Motion.

## LEGAL STANDARD

Under Section 4 of the Federal Arbitration Act ("FAA"), "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration

may petition any United States district court [. . .] for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA provides that a written agreement requiring arbitration of controversies arising out of a contract "evidencing a transaction involving commerce [. . .] shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 of the FAA creates a substantive rule applicable in state as well as federal courts. *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984).

In enacting the FAA, "Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (citation and internal quotation marks omitted). There is a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing (1) interstate commerce or (2) is revocable upon such grounds as exist at law or (3) in equity for the revocation of any contract. *See* 9 U.S.C. § 2. Further, the Supreme Court has emphasized the "fundamental principle that arbitration is a matter of contract[.]" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citation and quotation marks omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, [. . .] and enforce them according to their terms." *Id.* (internal citation and quotation marks omitted).

The FAA, however, "was not enacted to force parties to arbitrate in the absence of an agreement." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1286 (10th Cir. 1997). "Congress' concern was to enforce private agreements into which parties had entered." *Id.* (citations and internal quotation marks omitted).

Accordingly, "[t]he existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Id.* at 1287 (citation omitted). The Court looks "to state law principles of contract formation to tell us whether an agreement to arbitrate has been reached." *Id.* (citation omitted). It is the party seeking judicial enforcement of an arbitration agreement who bears the burden of persuasion. *THI of New Mexico at Hobbs Center, LLC v. Patton*, Civ. No. 11-537 (LH/CG), 2012 WL 112216, *6 (D.N.M. Jan. 3, 2012) (citation omitted).

## DISCUSSION

Under Section 4 of the FAA, Plaintiff moves to compel Defendants to arbitrate their claims. Defendants do not dispute that the Arbitration Agreement falls within the scope of the FAA or that their claims in the State Court Action fall within the scope of the Arbitration Agreement, but nonetheless argue that they should not be compelled to arbitrate their claims. Specifically, Defendants argue that the Court should abstain from reaching a decision, that Ms. Lifewarrior was not authorized to bind Ms. Deal to the Arbitration Agreement, and that the Arbitration Agreement is unenforceable.

**I.      The Court will not Abstain from Exercising Jurisdiction.**

Defendants, for the first time in their Supplemental Memorandum in Response to Plaintiff's Motion to Compel Arbitration, [Doc. 25], which the Court considers a reply, argue that, under the doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), the Court should abstain from exercising jurisdiction over this case. The Court notes that it was improper for Defendants to raise this new argument in their Supplemental Memorandum. Plaintiff, however, filed, and the Court granted, Plaintiff's Unopposed Motion for Leave to File Supplemental Reply in Support of its Motion to Compel Arbitration, attaching a

Supplemental Reply to the Motion [Doc. 26]. Because Plaintiff's Supplemental Reply responds to Defendants' abstention argument, Plaintiff is not prejudiced by the Court's consideration of the abstention argument.

In *Colorado River*, the Supreme Court announced an abstention doctrine under which a federal court, for reasons of "wise judicial administration," may stay or dismiss a federal suit pending resolution of a parallel state court proceeding. 424 U.S. at 817. The doctrine is governed by the general principle that "[a]bstention from the exercise of federal jurisdiction is the exception not the rule[.]" *Id.* at 813. Declining to exercise jurisdiction based on the *Colorado River* doctrine is appropriate only in "exceptional" circumstances. *Id.* at 818. Accordingly, this Court's "task . . . is not to find some substantial reason for the exercise of federal jurisdiction by the federal court; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the surrender of the jurisdiction." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983).

As a threshold issue, the Court must determine whether the state and federal proceedings at issue are indeed parallel. *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.* The Tenth Circuit has specifically held that in order to determine whether pending state proceedings are parallel to the federal proceedings, the Court must "examine the state proceedings *as they actually exist*." *Id.* (emphasis in original).

If the Court finds that the state and federal proceedings are parallel, "it must then determine whether deference to state court proceedings is appropriate under the particular circumstances." *Id.* at 1082. In *Colorado River*, the Supreme Court enumerated a nonexclusive list of factors to consider in deciding whether "exceptional circumstances" exist: (1) whether

5

either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction. *Id.* (citing *Colorado River*, 424 U.S. at 818). The Supreme Court discussed other factors in *Moses H. Cone*, including whether federal law provides the rule of decision, and the adequacy of the state court action to protect the federal plaintiff's rights. *Maulding*, 6 F.3d at 1082 (citing *Moses H. Cone*, 460 U.S. at 18 n. 20, 23, 28). Other courts have considered whether the party opposing abstention has engaged in impermissible forum-shopping. *Id.*

No single factor is dispositive, but rather, "[t]he weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone*, 460 U.S. at 16. The Court is cautioned against using the factors as a "mechanical checklist," and instead must engage in "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* Finally, the Court must resolve any doubt "in favor of exercising federal jurisdiction." *Maulding*, 16 F.3d at 1802.

Here, in a one-paragraph argument, Defendants contend that the State Court Action is parallel to the instant case. In the State Court Action, Defendants bring claims of wrongful death, negligence, negligence per se, negligent or intentional representations, violation of the UPA, and punitive damages. In the instant case, the only issue before the Court is whether Defendants should be compelled to submit those claims to arbitration. As Defendants note, however, in the State Court Action, on February 26, 2018, the same date on which Plaintiff filed the instant motion to compel arbitration, Plaintiff moved in the State Court Action for a protective order and order to stay all discovery pending a final resolution of the instant matter, and, in the alternative, requested that the state court enforce the Arbitration Agreement and

6

compel arbitration. Doc. 25-1. On June 21, 2018, the state court ruled on Plaintiff's motion, denying it without prejudice to Plaintiff's right to move to compel arbitration again after discovery. Doc. 25-2. Accordingly, the same issue – whether the Arbitration Agreement should be enforced and Defendants compelled to submit their claims to arbitration – is being litigated in both the state and federal proceedings.

Plaintiff argues that the litigation of the arbitration issue in both proceedings does not render the proceedings parallel because Plaintiff moved to compel arbitration in the State Court Action "only as an alternative to a stay and only to preserve their rights under the newly enacted state court rule, Rule 1-007.2, which requires parties seeking to compel arbitration to file a motion to compel no later than ten days after the service of the answer." Doc. 26 at 4-5. The Court need not decide whether the proceedings are parallel. Even if the Court were to reach that conclusion, abstention would be warranted only if, based on an analysis of the *Colorado River* factors, exceptional circumstances exist. Defendants present no analysis whatsoever of the *Colorado River* factors, and thus provide no basis for the Court to conclude that exceptional circumstances exist warranting abstention. As explained herein, the Court's own consideration of the *Colorado River* factors demonstrates that abstention is not warranted.

Because there was no assumption by either the state court or this Court of jurisdiction over any res or property, or any contention by Defendants that this forum is any less convenient to the parties than the state forum, the first two factors favor jurisdiction. *Moses H. Cone*, 460 U.S. at 19-21. The third factor, avoidance of piecemeal litigation, provides little support for declining to exercise federal jurisdiction. In *Moses H. Cone*, the Supreme Court considered and rejected the argument that an arbitration order in federal court would force the parties to resolve related disputes in different forums. The Supreme Court explained that this "misfortune,

however, is not the result of any choice between the federal and state courts; it occurs because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement." 460 U.S. at 20 (emphasis in original). Under the FAA, "an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Id.* This is true regardless of whether this Court or the state court decides the question of the enforceability of the Arbitration Agreement. *See id.* Although Defendants may be required to "litigate the arbitrability issue in federal rather than state court, that dispute is easily severable from the merits of the underlying disputes." *Id.* at 20-21. Accordingly, "there is no force here to the consideration that was paramount in *Colorado River* itself – the danger of piecemeal litigation." *Id.* at 19.

The fourth factor, the order in which the courts obtained jurisdiction, also weighs against abstention. By necessity, an action to compel arbitration must follow a refusal by the other party to arbitrate. Accordingly, Plaintiff could not have moved to compel arbitration until Defendants first filed their claims against Plaintiff, and then refused to arbitrate them. Further, this factor "is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* at 21. Accordingly, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Id.* Here, Defendants commenced the State Court Action on November 8, 2017, and Plaintiff commenced the instant action approximately three months later, on February 23, 2018. Three days later, on February 26, 2018, Plaintiff filed the instant motion to compel. On that same day, Plaintiff filed a motion in state court to stay the proceedings there pending resolution of the arbitration issue in this Court, asking only as an alternative that the state court enforce the Arbitration Agreement.

8

While the state court denied Plaintiff's motion, the state court explicitly made its ruling without prejudice, indicating that once discovery was undertaken the motion could be renewed.

Consideration of the additional factor of whether federal law provides the rule of decision is less clear. As in *Moses H. Cone*, the basic issue presented in Plaintiff's federal suit is "the arbitrability of the dispute" between Plaintiff and Defendants. *Id.* at 24. "Federal law in terms of the Arbitration Act governs that issue in either state or federal court." *Id.* Because, however, the federal courts' jurisdiction to enforce the FAA is concurrent with that of state courts, "the source-of-law factor has less significance." *Id.* at 25. At the same time, at least some of Defendants' arguments against enforceability of the Arbitration Agreement, namely that it is unconscionable and does not bind Defendants, are governed by New Mexico law. The Supreme Court, however, has indicated that "[a]lthough in some rare circumstances the presence of state-law issues may weigh in favor of [the surrender of federal jurisdiction], the presence of federal-law issues must always be a major consideration weighing against surrender." *Id.* at 26. Accordingly, on balance, this factor weighs slightly against abstention.

The additional factor of the adequacy of the state court action to protect the federal plaintiff's rights "presents the strongest basis for abstaining." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 208 (6th Cir. 2002). "The FAA extends Congress's legislative authority to the maximum extent permitted under the Commerce Clause, and is therefore binding on state courts that interpret contracts involving interstate commerce." *Id.* Accordingly, Plaintiff's rights under the FAA would be protected in the State Court Action. *Id.*

Finally, the additional factor of whether the party opposing abstention has engaged in impermissible forum-shopping once again points toward exercising federal jurisdiction. Defendants do not argue, and there is no basis in the record to conclude, that Plaintiff's filing of

9

the instant action was an impermissible attempt to avoid a state court decision on the enforceability of the Arbitration Agreement. Indeed, such an argument would be unavailing, as the FAA specifically provides that any party to an arbitration agreement may file an action in federal court to compel arbitration. *Id.* at 203-04. The act of filing an action to compel arbitration in federal court in compliance with the FAA alone provides no evidence of improper forum-shopping.

The above analysis demonstrates that each of the factors, save the adequacy of the state court proceeding to protect the federal plaintiff's rights, weighs against abstention. Accordingly, no "exceptional" circumstances exist to justify abandoning the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. The Court thus concludes that it should not abstain from exercising jurisdiction over Plaintiff's action to compel arbitration.

**II.     The FAA's Interstate Commerce Requirement is Met.**

The FAA applies to arbitration agreements that are part of a written contract "evidencing a transaction involving interstate commerce." 9 U.S.C. § 2. Under Section 2, "the word 'involving,' like 'affecting,' signals an intent to exercise Congress' commerce power to the full." *Canyon Sudar Partners, LLC, v Cole*, No. 3:10-1001, 2011 WL 1233320, *10 (S.D. W. Va. Mar. 29, 2011) (quoting *Allied Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995)). The reach of the FAA thus extends to transactions "in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control." *Citizens Bank v. Alafabco Inc.*, 539 U.S. 52, 56-57 (2003) (citation omitted).

Plaintiff asserts that it meets the interstate commerce requirement because the Arbitration Agreement "involved transactions that involved interstate commerce." Doc. 4 at 6. In support of its position, Plaintiff submits a declaration signed by Life Care Center's Executive Director, which states that its management company is an out-of-state company and that the facility received supplies and equipment that were purchased from out-of-state suppliers.

This Court and other "[c]ourts which have considered similar evidence have found it sufficient to fulfill the interstate commerce requirement of the FAA." *See THI of New Mexico at Hobbs Ctr., LLC v. Spradlin*, 893 F. Supp. 2d 1172, 1184 (D.N.M. 2012), *aff'd*, 532 F. App'x 813 (10th Cir. 2013); *Cole*, 2011 WL 1233320, at *10 (finding interstate commerce requirement met where nursing home purchased medical supplies, equipment, foodstuffs and cleaning supplies from out of state vendors, and resident's care was paid for by federal government) (citing *Triad Health Mgm't of Ga. III, LLC v. Johnson*, 679 S.E.2d 785 (Ga. Ct. App. 2009) (finding evidence of out of state supply purchases and insurance providers sufficient to show contract involving interstate commerce); *Estate of Ruszala v. Brookdale Living Communities, Inc.*, 1 A.3d 806, 817-18 (N.J. Super. 2010) (finding facilities' purchases of out of state supplies, food, medicine, and equipment left "little doubt that the residency agreements at issue . . . involve interstate commerce."); *Owens v. Coosa Valley Health Care, Inc.*, 890 So.2d 983, 987-88 (Ala. 2004) (finding testimony that majority of supplies and equipment were purchased by nursing home from out of state vendors and majority of its payments came from Medicaid and Medicare was sufficient to show interstate commerce); *Rainbow Health Care Center, Inc. v. Crutcher*, No. 07-194, 2008 WL 268321, *5 (N.D. Okla. Jan. 29, 2008) (holding that buying supplies from out of state vendors, standing alone, is enough to show a contract involving interstate commerce)); see *also Miller v. Cotter*, 863 N.E.2d 537, 544 (Mass. 2007)

("[A]ccepting payment from Medicare, a Federal program, . . . constitutes an act of interstate commerce."). In light of this authority, in addition to the "broad policy favoring arbitration," *Cole*, 2011 WL 1233320, at *11, the Court finds that the interstate commerce requirement is met here.

**III.     Ms. Deal and Her Estate Are Bound to the Arbitration Agreement Because Ms. Deal Was a Third-Party Beneficiary to the Agreement.**

Defendants argue that the Arbitration Agreement is unenforceable because Ms. Lifewarrior signed it pursuant to a Power of Attorney that did not grant her authority to bind Ms. Deal to arbitration. Doc. 12 at 4-6. The Court need not determine whether the Power of Attorney created a valid agency relationship between Ms. Deal and Ms. Lifewarrior, however, as no such relationship was required to create an enforceable Arbitration Agreement binding Ms. Deal to its terms. Under New Mexico law, although not a signatory to a contract, a third-party beneficiary of a contract may be bound by that contract. *Fleet Mort. Corp. v. Schuster*, 811 P.2d 81, 82 (N.M. 1991). "Whether a party is a third-party beneficiary depends on if the parties to the contract intended to benefit the third party." *Id.* at 83. "Such intent must appear either from the contract itself or from some evidence that the [third party] is an intended beneficiary." *Id.* The third-party beneficiary doctrine applies to arbitration contracts. *See Rivera v. Am. Gen. Fin. Servs., Inc.*, 242 P.3d 351, 358 (N.M. Ct. App. 2010) (compelling arbitration pursuant to third-party beneficiary doctrine), *rev'd on other grounds*, 259 P.3d 803 (N.M. 2011).

Here, the undisputed facts establish that Ms. Deal was a third-party beneficiary of the Resident Admission Agreement, of which the Arbitration Agreement was a part. She was the named resident to be admitted to the facility. Her care was the essential purpose of the Resident Admission Agreement. Indeed, in their complaint in the State Court Action, Defendants acknowledge that because of her condition, Ms. Deal "was dependent on [the Life Care Center]

12

for nursing and other healthcare services," and "was dependent on them for her activities of daily living." Doc. 4-5 at ¶¶ 24-25. Ms. Deal obtained the benefits of residency and care at the Life Center for eight months pursuant to the Resident Admission Agreement. Further, the terms of the Arbitration Agreement itself state that they "inure to the benefit of and bind . . . the Resident, his/her successors, assigns, agents, insurers, heirs, trustees and representatives, including the personal representative or executor of his or her estate." *See* Doc. 4-2. Accordingly, Ms. Deal was a third-party beneficiary of the Arbitration Agreement and, as such, was bound by its terms.

Defendants, as personal representatives of Ms. Deal's estate, are equally bound by the Arbitration Agreement. Under the New Mexico Wrongful Death Act, wrongful death claims are derivative of a decedent's rights, and a wrongful death beneficiary has no claim save those claims that the decedent herself would have had. *See Maestas v. Overton*, 526 P.2d 203, 204 (N.M. Ct. App. 1974) ("A literal reading of [the Wrongful Death Act] gives the personal representative a cause of action, only if the decedent would have had one absent death."), *rev'd on other grounds*, 531 P.2d 947 (N.M. 1975). New Mexico courts have continued to characterize the representative's rights as being derivative of the decedent's rights. *See Estate of Lajeuenesse v. Bd. of Regents*, 292 P.3d 485, 489 (N.M. Ct. App. 2012) (stating that the Wrongful Death Act "preserves the rights of action and transmits it to the personal representative" (internal quotation marks and citation omitted)). Defendants' claims thus are limited to those that Ms. Deal would have had if she lived. Because Ms. Deal was bound by the Arbitration Agreement to submit her claims to arbitration, Defendants, too, are bound to submit their claims to arbitration.

IV. **Defendants Fail to Establish that the Arbitration Agreement is Unenforceable.**

   A. **References in the Agreement to the American Arbitration Association Do Not Render the Agreement Unenforceable.**

The Arbitration Agreement provides that disputes between the parties:

13

> shall be resolved by binding [arbitration] by the American Arbitration Association, under the Code of Procedure then in effect. . . . If the American Arbitration Association is unwilling or unable to service or the parties mutually agree not to utilize the American Arbitration Association for whatever reason, then the parties shall mutually agree on some other Alternative Dispute Resolution Service or method to administer the binding arbitration proceeding.

Doc. 4-2 at 2. Defendants argue that because the American Arbitration Association ("AAA") "stopped administering these disputes," the Arbitration Agreement's references to the AAA render the Arbitration Agreement unenforceable. Doc. 12 at 6. In support of their argument, Defendants rely solely on C*ovenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex. rel Braddock*, 14 So.3d 695 (Miss. 2009).

In *Moulds*, the parties' arbitration agreement contained the following provision:

> The Resident and Responsible Party agree that any and all claims, disputes and/or controversies between them and the Facility or its Owners, officers, directors or employees shall be resolved by binding arbitration administered by the American Arbitration Association and its rules and procedures.

*Id.* at 706. The language of the agreement in *Moulds* thus "require[d] that the arbitration be administered by the AAA in accordance with the rules and procedures of that organization." *Id.* at 709. The AAA, however, had previously announced that it would no longer accept "the administration of cases involving individual patients without a post-dispute agreement to arbitrate." *Id.* at 706. The parties had not entered into any such "post-dispute agreement" to arbitrate. *Id.* at 709. Accordingly, the Supreme Court of Mississippi held that the arbitration agreement was unenforceable because the designated arbitration forum was unavailable. *Id.*

In contrast with the arbitration agreement at issue in *Moulds*, here the Arbitration Agreement does not require that the arbitration be administered by the AAA in accordance with its rules. To the contrary, the Arbitration Agreement contains a contingency plan in case the AAA is unavailable to administer the arbitration. Specifically, the Arbitration Agreement states

14

that, "[i]f the American Arbitration Association is unwilling or unable to service" the arbitration, "then the parties shall mutually agree on some other Alternative Dispute Resolution Service or method to administer the binding arbitration proceeding." Unlike the agreement at issue in *Moulds*, the Arbitration Agreement here thus provides that a dispute resolution service or method other than the AAA may be used. It follows that this Court cannot conclude, as did the court in *Moulds*, that the designated arbitration forum is unavailable. The references to the AAA thus do not render the Arbitration Agreement unenforceable.

### B. The Arbitration Agreement's Provisions Requiring Each Party to Bear Its Own Fees and Costs and Disallowing an Award of Exemplary or Punitive Damages Contravene New Mexico Statutory Provisions but do not Require Invalidation of the Entire Agreement.

The Arbitration Agreement contains a provision stating that "each party agrees to bear [its] own attorney fees and costs." Doc. 4-2. In their Complaint in the State Court Action, Defendants bring a claim for violation of the UPA (Count V). Doc. 405 at ¶¶ 63-67. The UPA mandates that a prevailing plaintiff on an UPA claim be awarded attorney's fees and costs. NMSA 1978, § 57-12-10(C) ("The court *shall* award attorney fees and costs to the party complaining of an unfair or deceptive trade practice or unconscionable trade practice if the party prevails."). Defendants argue that, by requiring that each party bear its own fees and costs and thus effectively prohibiting an award of fees and costs to the prevailing party, the Arbitration Agreement prevents Defendants "from vindicating their statutory rights in arbitration," and thus is unconscionable. Doc. 12 at 7-9.

The Court finds that the Arbitration Agreement's bar on awarding fees and costs is unenforceable as applied to Defendants' claim under the UPA. "[P]ursuant to the effective vindication doctrine, courts have refused to enforce arbitration agreements, or terms thereof, if [they] 'operate . . . as a prospective waiver of a party's right to pursue statutory remedies.'"

15

*Gorman v. S/W Tax Loans, Inc.*, No. 14-CV-89, 2015 WL 12751710, at *4 (D.N.M. Mar. 17, 2015) (quoting *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013)). Accordingly, under the effective vindication doctrine, a provision in an arbitration agreement "forbidding the assertion of certain statutory rights" would be unenforceable. *Am. Exp. Co.*, 570 U.S. at 236.

Here, while the Arbitration Agreement does not forbid the assertion of Defendants' rights under the UPA, by requiring that each party bear its own fees and costs, the Agreement limits Defendants' ability to vindicate their rights under the UPA. *Gorman*, 2015 WL 1275170, at *5. By effectively prohibiting an award of fees and costs to Defendants, even if they prevail on their UPA claim, the Arbitration Agreement is "in direct conflict with the statutory remedies available under the [UPA]." *Id.* Because enforcement of the provision in the Arbitration Agreement prohibiting an award of fees and costs thus would prevent Defendants "from obtaining important statutory remedies should [they] prevail" on their UPA claim, that provision is "unenforceable under the effective vindication doctrine." *Id.; see also Kristian v. Comcast Corp.*, 446 F.3d 25, 48 (1st Cir. 2006) ("we conclude that the award of treble damages under the federal antitrust statutes cannot be waived"); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 (5th Cir. 2003) (holding unenforceable a contractual provision restricting an arbitrator's ability to award punitive damages on a Title VII claim).

The Arbitration Agreement also contains a provision stating that "the award in arbitration shall not include any amount for exemplary or punitive damages." Doc. 4-2 at 2. In their Complaint in the State Court Action, Defendants bring several tort claims, and seek punitive damages based on those claims. Doc. 4-5 at ¶¶ 69-72. Under New Mexico statute, "[a]n arbitrator may award punitive damages or other exemplary relief if such an award is authorized by law in a civil action involving the same claim and the evidence produced at the hearing

justifies the award under the legal standards otherwise applicable to the claim." N.M.S.A. 1978, § 44-7A-22(a). By prohibiting the arbitrator from awarding exemplary or punitive damages, regardless of whether such an award is authorized by law and regardless of whether the evidence produced during the arbitration hearing justifies such an award, the Arbitration Agreement contravenes New Mexico statutory law, and thus is unconscionable. *See Pyo v. Wicked Fashions, Inc.*, Civ. No. 09-2422, 2010 WL 1380982, at *7 (holding unconscionable provision that precluded arbitrators from awarding punitive damages in light of New Jersey statute identical to the New Mexico statute at issue here).

The Court, however, does not agree that, based on the unenforceablity of these discrete provisions prohibiting awards of fees and costs and punitive or exemplary damages, the entire Arbitration Agreement unenforceable. The Court notes that the Arbitration Agreement contains a savings clause that provides that, "[i]n the event that any portion of the Arbitration Agreement is determined to be invalid or unenforceable, the remainder of this Arbitration Agreement will be deemed to continue to be binding upon the parties in the same manner as if the invalid or unenforceable provision were not a part of the Arbitration Agreement." Doc. 4-2 at 2-3. And under New Mexico law, "a specific term in an arbitration agreement is independently severable unless it is 'central to the arbitration scheme' such that severance would require 'substantially altering the method of dispute resolution contractually agreed on by the parties.'" *Gorman*, 2015 WL 1275170, at *7 (quoting *Rivera v. Am. Gen. Fin. Servs., Inc.*, 259 P.3d 803, 819 (N.M. 2011)); *see also Padilla v. State Farm Mut. Auto. Ins. Co.*, 68 P.3d 901, 909 ("To avoid the unconscionable result [of enforcing the provision of the contract that allowed de novo appeal in contravention of state law], we strike the de novo appeal provision in the contract and leave the

17

remainder of the contract intact. Because the appeal provision is severable from the agreement to arbitration, the insurance contract now contains a mutual agreement to binding arbitration.)."

Here, the unenforceable provisions that disallow awards of fees and costs and punitive or exemplary damages are not "central to the arbitration scheme," as they do[] not address "the most important question in an arbitration provision – what claims can and/or must be resolved in arbitration." *Gorman*, 2015 WL 1275170, at \*8. The Court finds only two "remedial limitations to be invalid." *Id.* "While important, available remedies are [not] central to the arbitration scheme." *Id.* Further, "severing the invalid terms here does not require complicated 'judicial surgery [of] a contract laced with unenforceable terms.'" *Id.* (quoting *Rivera*, 259 P.3d at 819).

To the contrary, by severing the provisions prohibiting the arbitrator from awarding fees and costs in connection with Defendants' UPA claim and from awarding punitive or exemplary damages where such damages are authorized by law in a civil action involving the same claim and the evidence produced at the hearing justify the award, "the arbitration agreement becomes 'fair and balanced' and permits [Defendants] to effectively vindicate [their] statutory rights." *Id.* The Court thus will sever from the Arbitration Agreement the provisions prohibiting the arbitrator from awarding fees and costs in connection with Defendants' UPA claim, and from awarding punitive or exemplary damages where such damages are authorized by law in a civil action involving the same claim and the evidence produced at the hearing justify the award under the legal standards otherwise applicable to the claims.

## CONCLUSION

There is no basis for the Court to abstain from exercising jurisdiction over this matter. Plaintiff has satisfied its burden of establishing an agreement to arbitrate that binds Plaintiff and Defendants. The interstate commerce requirement of the FAA is met. The Arbitration

Agreement is not unconscionable. The provision of the Arbitration Agreement that prohibits an award of fees and costs in connection with Defendants' UPA claim, and the provision of the Arbitration Agreement that prohibits an award of exemplary or punitive damages are unenforceable and thus shall be severed from the Arbitration Agreement. It is undisputed that all of Defendants' claims in the State Court Action fall within the scope of arbitrable claims within the Arbitration Agreement.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Arbitration [Doc. 4] is **GRANTED**, as follows:

(1) Plaintiff's request to compel arbitration is **GRANTED**;

(2) The Court severs from the Arbitration Agreement the provisions prohibiting the arbitrator from awarding fees and costs in connection with Defendants' UPA claim and from awarding punitive or exemplary damages where such damages are authorized by law in a civil action involving the same claim and the evidence produced at the hearing justify the award under the legal standards otherwise applicable to the claims;

(3) Defendants are ordered to arbitrate the claims asserted against Plaintiff in the State Court Action, in accordance with the terms of the Arbitration Agreement as modified by this Memorandum Opinion and Order; and

(4) This case is therefore **DISMISSED**.

DATED this 20th day of March 2019.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE